IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

STERLING R. RIVERS,                        )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )        Case No. 3:12-cv-538
                                           )
EDWARD KARPELLS, *et al.*,                 )        Judge Sharp
                                           )
        Defendants.                        )

## MEMORANDUM OPINION

Plaintiff Sterling Rivers is a pretrial detainee at the Davidson County Sheriff's Office–Criminal

Justice Center ("CJC") in Nashville, Tennessee. The plaintiff's *pro se* complaint (ECF No. 1) is before the

Court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

## I.      Allegations in the Complaint

The plaintiff names twenty different defendants, all in both their individual and official capacity,

and asserts numerous separate and largely unrelated causes of action. His complaint is lengthy and

rambling; the allegations of fact are summarized below:

On the evening of December 17, 2011, Rivers was subjected to a search, for no valid reason, by

Corrections Officer ("C.O.") Edward Karpells, who, along with C.O. Douglas Merideth, then assaulted

Rivers, using unnecessary force.

Rivers alleges that he wrote grievances about the issue, but that the reports filed by the officers

involved contained falsified information. At a disciplinary hearing, he was found guilty of attempted

assault and disruptive behavior, and not guilty on a number of other charges. He claims he should only

have been found guilty of refusing a direct order but for the fact that the officers lied on their reports.

As a result of this incident, the plaintiff was given a penalty of two 15-day periods of lockdown, in

the Special Management Unit ("SMU"). His time started on December 17, 2011 and, Rivers claims,

should have terminated on January 3, 2012, but that he was kept in SMU beyond that date. He kept

showing officers his paperwork which stated he was supposed to be released from SMU on January 3,

but they ignored him.  Finally on January 5, C.O. Hicks listened to him and reviewed his paperwork, and had him released.

Rivers alleges that Administrator Beth Gentry, who oversees "classification," falsely imprisoned him by trying to hold him in SMU until January 18 even though his "out date" was January 3, 2012. Rivers asserts he was denied due process when he was kept in the SMU for two days longer than he should have been.  Rivers also alleges that after he was released from SMU, he was incorrectly sent to a floor with a maximum security classification, where he was housed for two months without due process, again because he was negligently misclassified by Gentry, and because he had been falsely accused of various infractions.

On January 12, 2012, Rivers reported to C.O. Frawley that he was having problems with another inmate who had bumped him twice on purpose.  Rivers told Frawley that if it happened again he "would have to protect [him]self."  (ECF No. 1-1, at 8.)  Frawley wrote up Rivers for threatening another inmate. Rivers claims Frawley has been "picking on" him ever since he discovered Rivers intended to sue officers Merideth and Karpells.  In any event, Rivers was moved into a different cell, and he was satisfied with that result.  However, Rivers further complains that Lt. T. Walker and Administrator Weikal responded late and inadequately to his complaints against Frawley.

On March 9, 2012, Rivers allegedly again suffered retaliation by Frawley, who wrote him up for no reason and verbally assaulted him.  On this instance, there was a "shakedown" during which Officer Frawley tried to insist that Rivers leave his legal paperwork in his room, although other inmates were allowed to take with them their magazines, mail, and legal paperwork.  Rivers refused to leave his legal paperwork behind, because his lawyer was on his way to see him and because, Rivers claims, C.O. Frawley has "a habit of reading and trashing legal material."  (ECF No. 1-1, at 15.)  Rivers wrote a grievance against Frawley, alleging that he verbally assaulted him in front of witnesses, trying to create a disturbance.  Rivers received a "very rude" response to his grievance by Sgt. P. Denton, who simply took Frawley's side without performing any true investigation into the matter, and whose conclusions did not even correspond with Frawley's statements.

On April 21, 2012, Rivers returned to his floor after a visit to the law library.  He refused to be searched by C.O. Frawley, because of the problems he has had with Frawley in the past, and asked to

speak to the sergeant. Sgt. Wright closed the door to the room from which other inmates were watching this event unfurl so they could not witness the officials' mistreatment of Rivers. Rivers was at this time carrying a stack of legal pads and legal materials and had a pen in his right hand. Instead of searching him, Frawley grabbed Rivers and forced him to the ground, claiming Rivers was trying to stab him with an ink pen he had in his hand. Rivers objected, claiming he had not tried to stab Frawley, but the other officers in the area, including C.O. Henson and C.O Allen pinned him to the ground and handcuffed him. C.O. Allen grabbed and twisted his right foot even though he was already face-down on the floor, and Frawley had him in a neck lock and maced him directly in the face even though he was already pinned to the ground.

Rivers claims he thought he was going to die as a result of this incident. He wrote numerous grievances and complaints, but the officers who witnessed the event lied in their reports, claiming that they witnessed him trying to stab Frawley with his pen. He claims he has been denied his right to call witnesses, and that the officers who investigate reports of official misconduct are biased and do not conduct proper investigations. Rivers alleges specifically that Sgt. Denton participated in and condoned Frawley's misconduct by refusing to discipline Frawley.

On January 27, 2012, Rivers wrote a grievance about Sgt. Steely, who had prevented Rivers from going to the law library by lying to him and sending him to the GED computer room instead of letting him go to the law library. Program Manager Young responded by apologizing for the error and stated Rivers would be allowed to reschedule library time. On one of the occasions when the plaintiff was scheduled for a make-up session in the law library, C.O. Compton forced Rivers to choose between having an hour out-of-cell time (because he was on restrictions) or using that time to go to the law library. Rivers claims his law library time was "again intentionally sabotaged and denied." (ECF No. 1-1, at 28.)

Rivers further complains that CJC has a systemic problem with grievances; specifically, his grievances were frequently ignored and routed to the wrong person, or never received at all because the grievance box had been "busted open," and was not repaired for a long time despite grievances about that too. In addition, Rivers was chastised for writing too many grievances, and he claims that the CJC officers' failure to deal with grievances in a reasonable manner has hindered his access to the courts.

These complaints are addressed primarily to Lt. Walker, Administrator Weikal, and Grievance Administrator D. Blaylock.

On March 27, Rivers returned from the law library to find that his case manager, Valerie McCullough, had already visited the detainees on his side of the fourth floor, and had moved on to the second side of the fourth floor, which is administratively separate. The plaintiff claims C.O. Compton and Sgt. Denton could have allowed him to meet with McCullough on the other side of the floor but "instead of the officers being reasonable prudent people, they denied me my case management visit." (ECF No. 1-1, at 30.) Based on the allegation that Compton and Denton would not allow him to meet with McCullough, the plaintiff asserts that McCullough showed "pure negligence and wanton in regards of intentionally denying and neglecting Plaintiff Rivers case management service violating D.C.S.O. policys also showing a breach of duty that constituted a hindering of Plaintiff Rivers legal recourses and access to the courts." (ECF No. 1-1, at 34.)

Rivers also has complaints of finding rat/mouse feces in his food on two occasions. He complained and wrote grievances about these issues, and asserts that the problem has been ignored. The plaintiff asserts that C.O. White, Sgt. Cogdill, C.O. Dobbins, Sgt. Denton, Vernistine Dulin and ABL Management exhibited deliberate indifference to the plaintiff's right to sanitary, healthful food, and that he became ill as a result.

.       On March 21, 2012, while Rivers was still on administrative restrictions, he was supposed to be allowed an hour of out-of-cell time from 10:00 p.m. until 11:00 p.m. C.O. Warren refused to let him out of his cell at the proper time. Several minutes after 10:00, Sgt. Cogdill walked by his cell and did let him out. About forty-five minutes later, C.O. Warren later made him return to his cell even though his hour was not up. Rivers wrote a grievance about Warren which was not sustained. Sgt. Cogdill explained to Rivers that C.O. Warren had documented that she had let Rivers out of his cell at 9:50 and returned him to his cell at 10:50. Cogdill acknowledged that he knew this was not true because he himself had let Rivers out of his cell several minutes after 10:00, but Cogdill claimed that because C.O. Warren had documented that she had let him out, Sgt. Cogdill had to rule in Warren's favor on Rivers' grievance, even though he knew that Warren had falsified the time entry.

## II.     Screening Procedure and Standard of Review

*Pro se* pleadings are to be liberally construed.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e)(2), *sua sponte*, without prior notice to the plaintiff or service of process on the defendant, if the complaint fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

To state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, the factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

## III.     Law and Analysis

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Excessive Force

Prisoners who have been tried and convicted of a crime are protected from the use of excessive force by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The rights of  pretrial detainees, however, stem from the Due Process Clause of the Fourteenth Amendment, which "protects a

Case 3:12-cv-00538   Document 15   Filed 06/19/12   Page 5 of 7 PageID #: 113

pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same. *See Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]here is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does. . . ."). *Compare Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (applying the Eighth Amendment standard to a pretrial detainee's excessive-force claim under the Fourteenth Amendment), *with Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996) ("Since [the protection of the Fourteenth Amendment] extends beyond the prohibition of merely 'cruel and unusual' punishment, pretrial detainees must arguably be afforded a higher standard than that provided by the Eighth Amendment.").

The Sixth Circuit has not expressly decided this issue, but it is clear that pretrial detainees are accorded at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (citation omitted). In other words,

> [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

*Watkins v. Evans*, Nos. 95-4162, 95-4341, 1996 WL 499094, at *2 (6th Cir. Sept. 3, 1996),

In this case, Rivers has alleged that C.O.s Karpells and Merideth wantonly and unnecessarily assaulted him, inflicting severe pain, on December 17, 2011. The allegations are sufficient to state a cognizable claim under the Fourteenth Amendment, particularly in light of the possibility that the Fourteenth Amendment provides greater protections than the Eighth Amendment.

Likewise, Rivers alleges that he was subjected to an assault and excessive force on April 21, 2012, during an incident involving C.O.s Frawley, Wright, Henson, and Allen. The claims against these officers will likewise be permitted to proceed.

### B.    Remaining Claims

Based on the allegations in the complaint, it is doubtful that the plaintiff has stated a viable cause of action based upon the violation of his constitutional rights against any of the remaining defendants. However, under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over any other claims, including state-law claims, "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy."  For the most part, the Court is unable to ascertain at this juncture the extent to which the remaining claims assert causes of action under state law over which the Court may exercise supplemental jurisdiction; the Court will therefore permit the claims against the remaining defendants to proceed through service of process as well, with one exception.

The plaintiff fails to articulate any action or inaction taken by defendant Valerie McCullough for which liability could attach under any theory.  He simply states that on one occasion, he returned to his cell from a visit to the law library to find that McCullough had already visited his side of the fourth floor, and that two corrections officers unreasonably refused to let him leave his room and go to the other side of the floor to meet with McCullough.  He does not allege that McCullough had anything to do with that decision or was even aware of it, but he nonetheless claims that she breached various duties and prison policies as a legal matter.  Because the factual allegations are insufficient to support any cause of action whatsoever, the claims against McCullough will be dismissed prior to service of process.

## IV.    Conclusion

For the reasons set forth herein, the Court concludes that the plaintiff has stated a colorable claim for relief under 42 U.S.C. § 1983 against several of the named defendants, and that the complaint should be served on all the defendants, except McCullough, against whom the allegations in the complaint are insufficient to state any cause of action.  An appropriate order will enter.

Kevin H. Sharp
_____
Kevin H. Sharp
United States District Judge